NEWMAN, Circuit Judge,
dissenting.
The Leahy-Smith America Invents Act of 2011 changes the way patent validity disputes are resolved — a change at least as significant for this Nation’s patent system as the formation of the Federal Circuit in 1982. The purpose is as ambitious as it is necessary: to strengthen the incentive to industrial and technological innovation by restructuring the system for reviewing and adjudicating patent validity. .
Today’s economic reality is based on continuing advances in science and technology. The system of patents is integral to commercial development of new science and technology, and spurs innovators to create new products and methods of economic value. American industry and entrepreneurship use and rely on the patent system; and as patent activity has increased,[1] so have disputes concerning patent rights.[2]
Congress and the public recognized that the traditional adjudicatory structure is imperfectly adapted to resolution of technologically complex patent validity issues, *1325 as advancing science, competitive forces, and high stakes meet in the courthouse. It came to be understood that the cost and delay of litigation is a disincentive to commercial activity. When the result is inventions not made and technology not developed, the losers are the public and the Nation’s economy.
The Leahy-Smith America Invents Act (AIA) is the product of extensive study by the concerned communities and the Congress. The AIA’s purpose is to reinvigorate the foundations of industrial innovation, by providing expeditious and reliable review of patents that had previously been examined and granted. The goal is stability of patent-based property rights, whereby valid patents would be reinforced and invalid patents eliminated, in an economical proceeding conducted by experts in technology and law.
To this end, the AIA established a new adjudicatory body in the Patent and Trademark Office, and vested it with many of the civil litigation powers of the district courts. This new tribunal, named the Patent Trial and Appeal Board (PTAB), would have administrative judges experienced in technology and knowledgeable in the relevant law and policy, and would provide stability, confidence, and reliability to the patent-based foundations of industrial innovation.
The goal is to serve the Nation’s traditional innovative spirit and entrepreneurial energy, and thereby to enhance economic growth and industrial strength, while supporting discovery and invention for public benefit. This ambitious project consumed over a decade of evolution, starting with the May 10, 2001 hearing on “Patents: Improving Quality and Curing Defects” before the House Committee on the Judiciary.
The AIA, as enacted, contains balances and compromises, for many interests are affected. I write in dissent because the court’s rulings today depart from the text, purpose, and policy of the AIA, and abrogate the careful balance of this new adjudicatory system. The result is that patent validity adjudication is incompletely fulfilling the goals of the AIA.
I list my principal concerns:
1. The court today holds, contrary to the AIA, that the PTAB can “pick and choose” which of the challenged patent claims and issues it will decide in these new proceedings. Maj. Op. at 1316. The court endorses such partial decisions by the PTAB, and “see[s] no inconsistency” with leaving some of the challenged claims and issues undecided. Maj. Op. at 1316. This absence of finality negates the AIA’s purpose of providing an alternative and efficient forum for resolving patent validity issues.
Instead, the present practice of partial decision by the PTAB leads to duplicative proceedings in the PTAB and the district courts. Since the AIA provides for a different standard of proof than in the district courts, this system of partial decision does not achieve the reliability and expedition for which the AIA was enacted, but instead can produce prolonged uncertainty and multiplied proceedings, at increased rather than reduced cost. In the case at bar, validity of all of the challenged claims was not decided by the PTAB, illustrating this concern.
2. The court also misapplies the AIA provision that the decision whether to “institute” these post-grant proceedings is not appealable. The statute requires the PTO Director first to determine, at an initial “institution” phase, whether it is more- *1326 likely-than-not that at least one claim of the challenged patent is invalid. This threshold phase serves the tripartite purpose of screening out harassing and unfounded petitions, accommodating the PTO’s concern about the increased workload, and eliminating the delay and burden of interlocutory appeals.
The non-appealability of the institution determination should not mean that substantive rulings material to the final decision or to the propriety of the entire proceeding are immunized on review of the final decision, if such aspects arose at the institution phase. However, the court holds otherwise, and removes from judicial review any decision during the institution phase — here the question of whether certain prior patent litigation is a statutory or jurisdictional bar. These issues aré raised on this appeal, for the court has converted the threshold phase into a source of unap-pealable substantive rulings, subverting the purpose of the adjudicatory design.
3. The court also supports the PTO’s elimination of the statutory designation of different decision-makers for the institution phase and the trial phase. The AIA assigns the former role to the Director and the latter role to the PTAB. The record shows the concern of practitioners that the institution phase would become a short-cut to final judgment. Whatever the convenience to the PTO, there is no authority to violate the statute.
4. A critical aspect of the AIA — the aspect credited with the large influx[3] of petitions for post-grant proceedings — is the easier standard of patent invalidation that is accorded to these PTAB proceedings. Although patents submitted for PTAB review have all been previously examined and granted and carry the statutory presumption of validity, the AIA assigns the standard of preponderance of the evidence for invalidation, whereas the district courts must apply the standard of clear and convincing evidence for invalidation.
The panel majority also supports the PTO’s stingy implementation of the statutory authorization for claim amendment. The opportunity to amend is an important part of the balance struck in the AIA. The easier standards and lighter burdens for invalidation in AIA proceedings, including the PTAB’s use of the broadest claim interpretation instead of the correct claim interpretation, up-end the delicate balance crafted by Congress. Amendment issues are present in this case.
The America Invents Act made dramatic changes in the way patent disputes are resolved, in the way complex technologies are integrated into the law, in the way a devoted and expert agency is burdened in service to the Nation. It is our judicial responsibility to assure that the agency and its new tribunal are in compliance with the statute. It is our responsibility to assure that the legislative plan is fulfilled.
Discussion
The America Invents Act responds to concerns that the time and cost and uncertainty of resolving patent validity challenges are a disincentive to development and commercialization of new science and *1327 technology. As stated by Senator Leahy, an architect and principal sponsor of the legislation:
This legislation is not an option but a necessity.... I also want to ensure the delicate balance we have struck in the post-grant review process and make certain that the procedure is both efficient and effective at thwarting some strategic behavior in patent litigation and at promoting a healthier body of existing' patents.
Introduction of Patent Reform Act of 2006, 152 Cong. Rec. S8830 (Aug. 3, 2006) (statement of Sen. Patrick Leahy, Member, Sub-comm. on Intellectual Prop, of the S. Comm, on the Judiciary).
Senator Leahy refers to the “delicate balance” that pervades this statute. The legislative record spans a decade[4] of hearings, reports, bills, and debates, with submissions and testimony by the nation’s inventors, industries, bar associations, academics, the PTO and other government and public interests; and demonstrates the breadth of concerned attention throughout the development of this legislation.
Senator Grassley, a central figure in this effort, described the highlights of the achievement as the final bill neared enactment:
[T]he bill ... would establish an adversarial inter partes review, with a higher threshold for initiating a proceeding and procedural safeguards to prevent a challenger from using the process to harass patent owners. It also would include a strengthened estoppel standard to prevent petitioners from raising in a subsequent challenge the same patent issues that were raised or reasonably could have been raised in a prior challenge. The bill would significantly reduce the ability to use post-grant procedures for abusive serial challenges to patents. These new procedures would also provide faster, less costly, alternatives to civil litigation.
157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (statement of Sen. Grassley on S.23). The House Report on the final bill stated the necessity of assuring that serial and duplicative attacks did not result from the new procedures:
The Committee recognizes the importance of quiet title to patent owners to ensure continued investment resources. While this amendment is intended to remove current disincentives to current administrative processes, the changes made by it are not to be used as tools for harassment or as a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent. Doing so would frustrate the purpose of the section as providing quick and cost effective alternatives to litigation. Further, such activity would divert resources from the research and development of inventions.
H.R. REP. NO. 112-98, pt. 1, at 48 (2011).
The AIA was signed into law on September 16, 2011, with an effective date of September 16, 2012. The new procedures were promptly invoked. The concerns I outline arose early in implementation of the statute, and continue to this day.
*1328 I
PTAB Decision of Only Some of the Challenged Claims Is Contrary To the Statute
The America Invents Act vests the PTAB with authority to adjudicate post-grant validity under sections 102 (anticipation) and 103 (obviousness), for these aré the principal documentary grounds on which validity is challenged in the courts. These grounds are well suited to resolution by the PTAB whose adjudicators are experienced in technology, for the determination is required to be made from the viewpoint of “a person having ordinary skill in the art to which said subject matter pertains,” the words of section 103.
The America Invents Act requires the PTAB to issue a final written decision on the patentability of the challenged claims:
35 U.S.C. § 318(a). — Final Written Decision. If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).
The court today holds that, despite the statute, “the final order of the Board need not address every claim raised in the petition for review.” Maj. Op. at 1311. However, the statute uses the word “shall.” “Shall” is a term of command. Merck & Co. v. Hi-Tech Pharmacal Co., 482 F.3d 1317, 1322 (Fed.Cir.2007) (“Use of the word ‘shall’ in a statute generally denotes the imperative.”).
A statutory requirement cannot be overridden by agency rule. See Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933) (“[Ajdministrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction.”). However, the PTO proposed an administrative Rule authorizing the PTAB to decide which of the challenged claims and issues it would “proceed on”:
42.108(a). When instituting inter partes review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim.
Changes to Implement Inter Partes Review Proceedings of the Leahy-Smith America Invents Act, 77 Fed.Reg. 7041 (proposed Feb. 10, 2012) (recorded at 37 C.F.R. 42.108(a)).
This proposed Rule was widely criticized, as commentators pointed out that the Rule violated the statute and negated the AIA’s purpose of achieving finality of validity review by the PTAB instead of the district court. The Minnesota Intellectual Property Law Association (MIPLA) explained the consequences of the proposed departure from the statute:
[I]n cases where IPR would be granted under the proposed rule for some requested claims and not others, the result is likely to be a serial or parallel process of IPR review of some claims and Federal district court review of the other claims. Congress, however, appears to have intended that IPR be an alternative system in which a litigant can choose to resolve disputed patent validity in either an IPR setting or through the Federal courts, but not both. Hence, the claim-by-claim approach of § 42.108 would not seem to accomplish the result intended by Congress in this regard.
Comments on Changes to Implement Inter Partes Review Proceedings, MIPLA 2 at 4 *1329 (April 10, 2012) available at http://www. uspto.gov/sites/default/files/aia_ implementatioiVcomment-mipla2.pdf. The MIPLA complained that the proposed partial review raises “fairness and due process” concerns, and is unlikely “to fully achieve the intent of Congress in establishing these proceedings.” Id. at 3. The MI-PLA urged the PTO to “revert to the language of 35 U.S.C. § 314(a), which contemplates that review will be ordered as to all requested claims.” Id. at 5.
IBM’s chief patent counsel objected that the Rule is contrary to the AIA, stressing the mandatory words of the statute:
Under provisions of 318(a) final written decisions are required for all reviews which are “instituted and not dismissed”. The statute makes no provisions for reviews which are “instituted-in-part” or “dismissed-in-part”.... The same provision further provides that the Board “shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim ...” Thus, any claim challenged in the initial petition in a review that was instituted must be decided upon in the final written decision; the statute does not appear to leave discretion to provide a final written decision not addressing any claim that was initially challenged by the petitioner on the basis that the Office determined it to be “not part of the trial”. We do not see how the Office squares its attempt to limit the scope of review with the referenced statutory requirements; in essence, the scoping decision amounts to a premature final decision. We believe the Office should, consistent with the statute, allow all challenged claims to be included in the inter partes review when it has found a reasonable likelihood of prevailing with respect to one challenged claim.
Comments on Changes to Implement Inter Partes Review Proceedings, IBM 5 at 3 (April 6, 2012) (emphases in original) (par-entheticals omitted) available at http:// www.uspto.gov/sites/default/files/aia_ implementation/eomment-ibm5.pdf.
Expressions of concern were also presented by other participants in the process that produced the legislation. See Comments on Changes to Implement Inter Partes Review Proceedings of the Leahy-Smith America Invents Act, available at http://www.uspto.gov/patent/laws-and-regulations/america-invents-act-aia/ comments-ehanges-implement-inter-partes-review.
As the panel majority recognizes, Maj. Op. at 1316, the PTO stated that its departure from the statute allows it to “streamline and converge the issues for consideration,” to “aid[ ] in the efficient operation of the Office and the ability of the Office to complete the [review] within the one-year timeframe.” Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed.Reg. 48703 (Aug. 14, 2012) (Response to Comment 60). Criticism of the practice of partial resolution of the challenged claims continued, and the PTO on Aug. 20, 2015 published the following Comment and Response:
Comment 12: Several commenters expressed concern about the Office’s practice of allowing institution based on some, but not all, of the grounds presented in a Petition. Commenters are concerned that because the decision on institution is not appealable, and any ground on a challenged claim that is not *1330 instituted is not reflected in the final, appealable decision, a petitioner has no redress for grounds on which the Office chooses not to institute....
Response: The Office appreciates the concern expressed by the comments, but must balance these concerns with the workload in AIA proceedings and the statutory time constraints under which AIA review proceedings must be decided. In order to ensure a fair and efficient process to resolve reviews in a timely fashion, the Office uses partial institution as one tool to manage effectively AIA reviews. The Office is cognizant of the ramifications of partial institution where the grounds are in different statutory classes, or when a reference may be overcome by swearing behind it, and strives to strike an appropriate balance between what can be accomplished during the finite time frame for a trial and fairness to the parties in fully vetting patentability issues on challenged claims. The Office will continue to assess whether such balance is appropriately struck.
80 Fed.Reg. 50739 (Aug. 20, 2015).
Agency convenience is not grounds for negation of a statutory obligation. See Utility Air Regulatory Grp. v. Environmental Protection Agency, — U.S. —, 134 S.Ct. 2427, 2446, 189 L.Ed.2d 372 (2014) (“[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.”). Nonetheless, the PTO continues to adhere to Rule 42.108(a), although it is apparent that the Rule conflicts with the statute, and that “[n]othing in the language of the statute states or suggests that the word ‘shall’ does not mean exactly what it says.” Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 n. 9, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).
The criticized Rule was here applied to the '376 patent of Mentor Graphics, presented for inter partes review by Synop-sys’ petition challenging claims 1-15 and 20-33. Review was instituted on claims 1-9, 11, 28, and 29, the selection apparently made by the PTAB. The PTAB conducted a trial, and issued a decision on the selected claims. The PTAB ruled that claims 5, 8, and 9 were unpatentable, and that claims 1-4, 6, 7, 11, 28, and 29 were patentable. The PTAB did not decide the pat-entability of claims 10, 12-15, 20-27 and 30-33.
Responding to Synopsys’ objection to the incomplete decision, the panel majority states that “the statute is quite clear that the PTO can choose whether to institute inter partes review on a claim-by-claim basis ... and that the Board can pick and choose among the claims in the decision to institute.” Maj. Op. at 1315-16. The statutory clarity is ephemeral, and authority to “pick and choose among the claims” does not exist. Neither the AIA nor anything in its voluminous history suggests a legislative plan whereby the Board could decide which of the challenged claims would be decided, leaving the other challenged claims untouched.
The design of the AIA is that the major documentary validity challenges, sections 102 and 103, will be subject to decision by the PTO expert tribunal. As commentators pointed out, if only some of the challenged claims are decided, there is neither complete nor final disposition. Senator Schumer explained this foundation of the legislation:
What the bill does ... is very simple. It says the Patent Office will make an *1331 administrative determination before the years of litigation as to whether this patent is a legitimate patent so as not to allow the kind of abuse we have seen.
157 Cong. Rec. S5437 (statement of Sen. Schumer during Senate consideration of H.R. 1249).
When review is instituted, 35 U.S.C. § 318(a) requires the PTAJB to issue a Final Written Decision on all of the claims challenged in the petition. The AIA authorizes the Director to decline to institute any requested review, 35 U.S.C. § 314(d), but the AIA does not authorize or contemplate that the PTO would pick and choose which patent claims it will decide. “Administrative construction of a statute which conflicts with the express meaning of the statutory terms can be viewed as authoritative only if it appears that Congress has in fact accepted that construction, and the burden of proof necessarily is on the proponent of the administrative view.” Saxbe v. Bustos, 419 U.S. 65, 84, 95 S.Ct. 272, 42 L.Ed.2d 231 (1974).
The legislative record emphasizes the purpose of this new PTO tribunal to resolve validity issues, a purpose that collapses if only some of the challenged claims are decided. A Senate Report explained:
[I]f [such] proceedings are to be permitted, they should generally serve as a complete substitute for at least some phase of the litigation.
S.Rep. No. 110-259, at 67 (Additional Views of Senator Specter Joined with Minority Views of Senators Kyi, Grassley, Coburn and Brownbaek) (2008). This statement encapsulates the purpose of the legislation, and the record shows that the concerned communities welcomed this new adjudicatory role of the PTO, built on its reputation for excellence.

Chevron Deference Does Not Apply

PTO Rule 42.108(a) is “not in accordance with law,” the words of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Agency rulemaking authority “does not include a power to revise clear statutory terms,” Utility Air Regulatory Group, 134 S.Ct. at 2446:
Under our system of government, Congress makes laws and the President, acting at times through agencies ... “faithfully execute[s]” them. U.S. Const., Art. II, § 3.... The power of executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law’s administration. But it does not include a power to revise clear statutory terms that turn out not to work in practice.
See also, e.g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976):
The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute----
These concepts are the core of the administrative state. “ Chevron deference” applies to statutory implementation in fidelity to the statute — not statutory departure from the legislative plan.
Nonetheless, the panel majority, invoking Chevron deference, holds that the statute “only requires the Board to address claims as to which review was granted.” Maj. Op. at 1317. That is not what the statute says. “[Reasonable statutory interpretation must account for both ‘the specific context in which ... language is *1332 used’ and ‘the broader context of the statute as a whole.’ ” Utility Air Regulatory Group, 134 S.Ct. at 2442 (omission in original). Partial decision negates the purposes of the America Invents Act, and achieves neither expedition nor economy nor finality nor estoppel.
Senator Kyi explained a central purpose of the America Invents Act is “to force a party to bring all of [its] claims in one forum ... and therefore to eliminate the need to press any claims in other fora.” 154 Cong. Rec. S9989. Senator Kyi stressed that this new system “ideally [will] completely substitute for at least the patents-and-printed-publication portion of the civil litigation.” 157 Cong. Rec. S1376. This goal is thwarted when the PTAB decides validity of some but not all of the claims challenged in the petition.
The justification offered for partial institution or partial decision of an AIA petition is the workload of the PTO. Maj. Op. at 1316. See Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm, on the Judiciary, 110th Cong. 7 (2007) (statement of Director Jon Dudas) (“[Q]uite frankly, without having the resources available now, we are not certain that we could handle the administration of that many cases.”). This concern received a sympathetic response, and the AIA authorizes the Director to refuse to institute any review petition in its entirety, without excuse and without appeal. Senator Kyi explained that this provision
reflects a legislative judgment that it is better that the Office turn away some petitions that otherwise satisfy the threshold for instituting an inter partes or post-grant review than it is to allow the Office to develop a backlog of instituted reviews that precludes the Office from timely completing proceedings.
157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (statement of Sen. Kyi).
The PTO can refuse to institute any post-grant challenge, as the statute provides, 35 U.S.C. § 314(d) (“The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.”). However, when a petition is accepted, the PTAB “shall” decide the challenged claims, 35 U.S.C. § 318(a). Decision of only some of the challenged claims leaves the undecided claims for district court resolution, as this court recognizes, Maj. Op. at 1316-17. In such event, the AIA purpose of replacing the cost and delay of district court validity proceedings instead dissolves into potentially duplicative proceedings in the PTO and the district court, enlarging rather than reducing cost and delay.
The panel majority states that if there is uncertainty as to this statutory obligation of the PTAB, Chevron deference requires support of the PTO position. However, Chevron states that: “If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). “Chevron allows agencies to choose among competing reasonable interpretations of a statute; it does not license interpretive gerrymanders under which an agency keeps parts of statutory context it likes while throwing away parts it does not.” Michigan v. Environmental Protection Agency, — U.S. —, 135 S.Ct. 2699, 2708, 192 L.Ed.2d 674 (2015).
Here there are no “competing reasonable interpretations.” Id. The command of section 318(a) is clear; the intent of Con *1333 gress is plain in the statute. There is no ambiguity, and no silence; Chevron provides no support for “pick and choose” authority. The theory that the PTAB can select what it will decide cannot be found in the legislative record. To the contrary, partial post-grant review eviscerates the purpose of resolving major validity issues in a PTO tribunal instead of in the district court.
The judicial obligation is to assure fidelity to the statute and to the legislative policy, lest we become complicit in frustrating the intent of Congress:
[T]he courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.
Federal Election Comm’n v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981).

The Legislative Record Cannot Be Discarded

The panel majority disposes of the legislative record with the remark that “Floor statements by a few members of the legislative branch cannot supplant the text of the bill as enacted.” Maj. Op. at 1316. That is not this legislative record.
The record of the AIA starts with a House Judiciary hearing on “Patents: Improving Quality and Curing Defects,” on May 10, 2001, and shows the continuing involvement of both parties and both Houses, filling nine fat volumes in the Federal Circuit library. There are statements by Senators and Representatives, statements for government agencies including the PTO, the Department of Commerce, the International Trade Commission, the Department of Health and Human Services, and the Government Accountability Office. There are written submissions and recorded testimony from large and small industries, from labor unions, from inventors, and from virtually every patent bar association in the nation, as well as from university scientists, law professors, and others. There is interaction, commentary, debate and compromise. The panel majority’s dismissal of this record as “a few floor statements” is not easy to fathom.
We have canvassed the entire record, to “add force and life to the cure and remedy, according to the true intent of the makers of the act.” Heydon’s Case, 76 Eng. Rep. 637, 638 (1584). The record shows bipartisan unanimity on the foundational principle of this legislation; that is, that a tribunal within the PTO would be empowered to conduct post-grant review of major patent validity issues, with the intent to provide an expert adjudicatory alternative to litigation. The commentators’ views of details in achieving this goal were not unani-mous, and balances, trade-offs, and compromises are embodied in the final statute. The court must give effect to this legislative accomplishment.
Statutes are administered to conform to “the design of the statute as a whole and to its object and policy.” Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). The record shows the participation and collaboration among the legislators as well as the concerned communities. See 157 Cong. Rec. S1044 (daily ed. Mar. 1, 2011) (statement of Sen. Leahy):
Mr. President, the Senator [Kyi] has been involved in this right from the be *1334 ginning. We have worked at having a bill that would be in the best interests of the Senate under both Republicans and Democrats across the political spectrum. We have worked very closely together.
Many Senators and Representatives placed comments in the record. Senator Ted Kaufman, of the Senate Judiciary Committee, described PTO post-grant review as “a viable alternative to litigation:”
The good news is that there are several aspects of the reform effort that are relatively uncontroversial. Just about everyone agrees that we need ... to limit unnecessary litigation costs. So there is much on which we can agree, including ... improving the Patent Office challenge process as a viable alternative to litigation.
Patent Reform in the 111th Congress: Legislation and Recent Court Decisions: Hearing Before the Senate Comm. on the Judiciary, 111th Cong. 205 (2009).
Senator Schumer cited the benefits of this alternative forum for validity determination:
Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of ... providing] a cost efficient alternative to litigation.
157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011).
Senator Sheldon Whitehouse referred to the cost and delay of litigation:
Similarly, the bill will improve administrative processes so that disputes over patents can be resolved quickly and cheaply without patents being tied up for years in expensive litigation.
157 Cong. Rec. S1052 (daily ed. Mar. 1, 2011).
The intended benefits were also described by Representative Issa, a member of the House Judiciary Committee and its Subcommittee on Courts, the Internet, and Intellectual Property:
[The issue of overzealous litigation is] addressed in part in this bill. The creation of a post grant review procedure at the Patent Office will help direct some conflicts away from court to an administrative remedy, hopefully saving vast resources in time and money.
153 Cong. Rec. 23927-66, (2007) (House consideration and passage of H.R. 1908).
Representative Berman discussed the value of an agency procedure for assuring that issued patents are valid:
When functioning properly, the patent system encourages and enables inven'tors to push the boundaries of knowledge and possibility. I support strong, robust protection for quality patents. However, when the system functions improperly, such as allowing an overly broad or obvious patent, the patent system can stifle innovation and harm America’s competitiveness in the global economy.... This legislation favors no industry, no person, organization or interest group. It seeks to solve problems that we have identified and have been identified for us by outside experts and agencies.
153 Cong. Rec. 23904-11, (2007) (House consideration of H.R. RES. 636 (rule for debate on Patent Reform Act of 2007)).
Senator Leahy, reporting the Administration’s support of the proposed legislation, again mentioned the “alternatives to costly and complex litigation” that would *1335 be achieved, along with other benefits of the legislation:
The Administration supports Senate passage of S. 28. As a whole, this bill represents a fair, balanced, and necessary effort to improve patent quality, enable greater work sharing between the United States Patent and Trademark Office (USPTO) and other countries, improve service to patent applicants and the public at the USPTO, and offer productive alternatives to costly and complex litigation.
157 Cong. Ree. S1030 (daily ed. Mar. 1.2011).
The legislators gave attention to assuring the efficiency and effectiveness of this “second window” of agency action. Senators Specter, Kyi, Grassley, Coburn, and Brownbaek stated in a Senate Report:
[O]pening up a second window for administrative challenges to a patent only makes sense if defending a patent in such proceedings is not unduly expensive, and if such proceedings substitute for a phase of district-court litigation .... The initiation of the proceedings is likely to lead to a stay in the litigation, which likely will remain in place through the appeal of the PTO’s second-window decision.... If second window proceedings are to be permitted, they should generally serve as a complete substitute for at least some phase of the litigation.
S.Rep. No. 110-259 at 66 (2008). The Senators stressed that the second window should be a “complete substitute” for the major validity phase — not a partial disposition.
These goals are forsaken if the PTO decides only some of the challenged claims, restoring the costly litigation procedures and delay that the AIA is designed to replace. The intent and purpose of the legislators, embodied in the enacted legislation and replete in its history, cannot be ignored. Amid universal accolades for assignment to the PTO of post-grant review of major issues of validity, the legislators and collaborators never suggested that the PTO could “pick and choose” which of the challenged claims would be decided. This spurious outcome was not contemplated.
Representative Manzullo stressed the legislative purpose that these PTO proceedings would substitute for district court proceedings, not merely provide another forum for non-final validity debate:
It is clearly appropriate to have an administrative process for challenging patent validity, but it should exist within a structure that guarantees a quick — and final — determination. Congress must ensure that the administrative processes provided for in the bill do not become a vehicle for infringers to avoid justice.
Patent Reform Act of 2009: Hearing Before the House Comm. on the Judiciary, 111th Cong. 153 (2009).
The panel majority supports PTAB partial decision of some of the challenged claims by suggesting that maybe other validity issues would require district court resolution, beyond the section 102 and 103 issues assigned to the PTAB. Maj. Op. at 1316. It is of course possible that claims held valid by the PTAB under sections 102 and 103 would be vulnerable on other grounds. The legislators recognized that not all validity issues are assigned to the PTAB. Senator Kyi explained:
In this bill, however, the issues that can be raised in the second window are so sharply limited that the goal of flushing out all claims is unattainable. Only 102 *1336 and 103 arguments based on patents and printed publications can be raised in the second window....
154 Cong. Rec. S9982-93 (daily ed. Sept. 25, 2008) (statement by Sen. Kyi on S. 3600).
The legislators also recognized that sections 102 and 103 are the major grounds of challenge to issued patents, as well as the most demanding of technologic or scientific expertise. The heavy and immediate recourse to the new AIA proceedings attests to the soundness of this principle. The possibility that other grounds of invalidity might also be present does not justify dilution of the provisions directed to sections 102 and 103.
On this vast legislative record, it is surprising to read the panel majority’s dismissal of “floor statements by a few members of the legislative branch.” Maj. Op. at 1316. To the contrary, the record confirms that throughout the gestation of the America Invents Act, legislators of the House and Senate sought strong and conclusive resolution of the most challenging issues of patent-supported innovation, by providing an effective alternative to district court litigation, whereby the expert agency would reliably and confidently review the validity of granted patents.
Ignoring this purpose, the panel majority holds that “the validity, of claims for which the Board did not institute inter partes review can still be litigated in district court. We see no inconsistency in this.” Maj. Op. at 1316. To the contrary — it is inconsistent with the entirety of the America Invents Act.
II
The Stay and Estoppel Provisions Are Also Undermined by Partial Decision of Validity Challenges
An amicus curiae explained the stay and estoppel provisions of the AIA and their role in resolution of patent disputes:
The experienced administrative judges at the PTAB evaluate the patentability of the claims identified by a petitioner. Claims that are cancelled for lack of patentability vanish from the litigation entirely. Claims that undergo review, and survive, will return to the district court with statutory estoppel, which prevents the accused infringer from making the same invalidity arguments before the district court that it made before the PTA. Thus, whether or not the patent claims are cancelled or survive, the case is simplified for claims addressed in a PTAB trial. It is therefore no surprise that, as Congress envisioned, courts frequently stay litigation pending PTAB review. But when the PTAB decides to review only some of the challenged claims, but not others, it undermines the intended efficiency of these trials and saddles the district courts with larger and redundant workloads.
SAS Institute amicus Br. 6 (Oct 10, 2014).
The stay and estoppel provisions become irrelevant if only some of the challenged claims are decided by the PTAB, leaving other claims unresolved. Yet the court today sees “no inconsistency” in leaving some claims undecided, because “the validity of claims for which the Board did not institute inter partes review can still be litigated in district court,” Maj. Op. at 1316. This is an extreme distortion of the statutory purpose.
Senator Grassley discussed the scope of the litigation stay authorization, as the AIA reached enactment in the Senate:
Lengthy and duplicative proceedings are one of the worst evils of other systems of administrative review of patents.... Ideally extending could-have-raised es-toppel to privies will help ensure that if *1337 an inter partes review is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publieations portion of the civil litigation.
157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011).
On the foundational principle that the PTAB proceeding is designed as an alternative to district court litigation, there was extensive commentary from the innovation communities. An example is a letter from the Consortium of Higher Education Institutions, supporting the proposed new system because it would—
reduce patent litigation costs by establishing the new post-grant procedure noted above, and by significantly improving the current inter partes review procedure, which will provide a lower-cost alternative to civil litigation to challenge a patent throughout its lifetime, while significantly reducing the capacity to mount harassing serial challenges ...
157 Cong. Rec. S1178 (daily ed. Mar. 3, 2011). The PTO Director, testifying for the administration, also supported estop-pel, stating that—
the estoppel needs to be quite strong that says on the second window any issue that you raised or could have raised ... you can bring up no place else. That second window, from the administration’s position is intended to allow nothing — a complete alternative to litigation.
Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm, on the Judiciary, 110th Cong. 13 (2007) (statement of Director Jon Dudas).
The court’s ruling today inhibits the America Invents Act from achieving its purposes. It is reported that some district courts are declining to stay parallel litigation. E.g. Invensys Sys. v. Emerson Elec. Co., No. 6:12-cv-00799, 2014 U.S. Dist. LEXIS 128454, at *10 (E.D.Tex. July 25, 2014) (district court denying stay where PTAB instituted partial review because “any simplification is likely to be minimal”); U.S. Nutraceuticals LLC v. Cyanotech Corp., No. 5:12-cv-366-Oc-10PRL, 2013 U.S. Dist. LEXIS 163057, at *8 (M.D.Fla. Oct. 15, 2013) (recommending denial of stay pending inter partes review because “the USPTO may authorize the review to proceed on only ‘some of the challenged claims’ or on only ‘some of the grounds of unpatentability asserted for each claim.’ 37 C.F.R. § 42.108(a). It is entirely possible, perhaps even likely, that this case will proceed on numerous claims regardless of the outcome of the USPTO proceeding”); Xilinx, Inc. v. Invention Inv. Fund I LP, Nos. 5:11-cv-00671-EJD, 5:11-cv-04407-EJD, 2012 WL 6003311, at *4 (N.D.Cal. Nov. 30, 2012) (“the court will have to resolve all claims in dispute as to [claims not currently undergoing inter partes reexamination]. That being the case, waiting for the outcome of reexamination does nothing for that portion of the litigation.”).
Similarly for the estoppel provision, it too is undermined by partial decision, for estoppel is effective only when validity is resolved by the PTAB. This provision is important to the AIA structure, as explained by Representative Jackson-Lee, for the purpose of “prohibiting a party from reasserting claims in court that it raised in post-grant review.” 153 Cong. Rec. H10,280 (daily ed. Sept. 7, 2007). This view was urged by the PTO as important to the new proceeding:
We would favor providing for a second-window review to have a different estop- *1338 pel effect than a first-window review ... A second-window review, however, will serve as a substitute for court litigation and, as such, should bind not only the patentee but also the challenger as a decision on the merits in litigation would.
Patent Reform,: The Future of American Innovation: Hearing Before the Senate Comm, on the Judiciary 110th Cong. 136— 137 (2007) (statement of Director Jon Du-das). This position was reiterated by Director Kappos:
If I can say that in my own words also, that I believe there are significant advantages for patentees who successfully go through the post-grant system- — -in this case inter partes review — because of'those estoppel provisions. Those es-toppel provisions mean that your patent is largely unchallengeable by the same party.
America Invents Act: Hearing on H.R. 1219 Before the House Comm, on the Judiciary, 112th Cong. 52-53 (2011) (statement of Director David Kappos).
Instead of vigorously implementing the AIA as it was enacted, the panel majority’s rulings today waffle toward the inefficiencies, conflicts, and uncertainties that the America Invents Act was designed to resolve.
Ill
Rulings at “Institution” Do Not Restrict All Appellate Review
The “institution” phase of the AIA is a threshold proceeding whose primary purpose is to screen out unsupported attacks on validity. As Senator Grassley explained, there is a “higher threshold” for commencing a PTAJB proceeding as compared with the filing of a complaint in district court, by requiring a showing that at least one patent claim is more likely than not invalid. This is a safeguard against harassment, tactical delay, and like abuses. This purpose pervades the legislative record, e.g., 157 Cong. Rec. S952 (statement of Sen. Grassley) (describing the AIA’s “procedural safeguards to prevent a challenger from using the process to harass patent owners.”).
The “institution” decision is, by statute, not appealable. However, information presented and rulings made at this threshold are not immunized from judicial review, when material to the final decision on validity. The court today holds otherwise, stating that “an issue relating to institution does not become appealable simply because the Board mentions that issue in its final decision.” Maj. Op. at 1314 n. 4. The court cites Achates Reference Publishing, Inc. v. Apple Inc., 803 F.3d 652 (Fed.Cir.2015), for its statement that the “appeala-bility bar applies to institution decisions ‘even if such assessment is reconsidered during the merits phase of proceedings and restated as part of the Board’s final written decision.’ ” Maj. Op. at 1314 n. 4 (quoting Achates, 803 F.3d at 658).
Precedent does not require this extended application of Achates. In Versata Dev. Group, Inc. v. SAP Am., Inc., 793 F.3d 1306 (Fed.Cir.2015), the court held that when information at the threshold phase is material to the PTAB final decision, this court on appeal is not precluded from reviewing such information. The court stated:
Congress explained the anomalous nature of a bar to judicial review of final agency action: “Very rarely do statutes withhold judicial review. It has never *1339 been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board.”
Id. at 1319 (quoting S.Rep. No. 79-752, at 26 (1945)). As stated in Social Security Board v. Nierotko:
Administrative determinations must have a basis in law and must be within the granted authority.... An agency may not finally decide the limits of its statutory power. That is a judicial function.
327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718 (1946). These principles are a foundation of the Administrative Procedure Act.
On this appeal, a ruling that the court insulates from review relates to the one-year bar. The America Invents Act requires that a petition must be filed within one year after the start of any district court litigation on the same patent:
35 U.S.C. § 315(b) Patent Owner’s Action. — An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent....
Although this issue is presented on this appeal, the panel majority refuses to consider it because it was decided at the “institution” phase. The question is whether a predecessor to Synopsys, in litigation with Mentor Graphics more than a year earlier, raised the one-year bar. The PTAJB held that there was no bar. PTAB Op. 14-17. The court today holds that “the PTO’s decisions concerning the § 315(b) time bar, including determinations of the real party in interest and rulings on discovery related to such determinations, are non-appealable,” even after the PTAB’s final written decision. Maj. Op. at 1323.
It is unlikely that such issues material to statutory compliance — issues of privity, standing, and jurisdiction — were intended to be excluded from appellate review. Such a departure from the judicial obligation cannot be presumed. See Crowell v. Benson, 285 U.S. 22, 54-55, 52 S.Ct. 285, 76 L.Ed. 598 (1932):
A different question is presented where the determinations of fact are fundamental or ‘jurisdictional,’ in the sense that their existence is a condition precedent to the operation of the statutory scheme. These fundamental requirements are ... indispensable to the application of the statute ... because the Congress has so provided explicitly.
The Court in Crowell notes that: “In relation to administrative agencies, the question in a given case is whether it falls within the scope of the authority validly conferred.” Id. at 54 n. 17, 52 S.Ct. 285.
Whether or not the one-year bar here is deemed jurisdictional, it is an essential part of the AIA structure. The correctness of its treatment is subject to the traditional judicial review of agency determinations; the question is not insulated from appeal simply because it was decided at the start of the post-grant proceeding. The Court guides in Bowen v. Michigan Academy of Family Physicians that preclusion of judicial review is viewed strictly:
We begin with the strong presumption that Congress intends judicial review of *1340 administrative action. From the beginning “our cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.” Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).
476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (alteration in original). The appellate court must ensure that an agency’s action is not “so extreme as to amount to an abdication of its statutory responsibilities.” Heckler v. Chaney, 470 U.S. 821, 833 n. 4, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). When an agency “exercise[s] its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers.” Id. at 832, 105 S.Ct. 1649.
In sum, “Congress rarely intends to prevent courts from enforcing its directives to federal agencies;” there is “a strong presumption favoring judicial review of administrative action.” Mach Mining, LLC v. EEOC, — U.S. -, 135 S.Ct. 1645, 1651, 191 L.Ed.2d 607 (2015) (quoting Bowen, 476 U.S. at 670, 106 S.Ct. 2133). My colleagues’ position that no ruling during institution can receive appellate review, even when material to the final decision, cannot be correct.
IV
The AIA Assigns the Decision to “Institute” to the Director, and Assigns the Trial and Final Decision to the PTAB
By statute, the “institution” decision is made by the Director, not by the judges of the Patent Trial and Appeal Board. The legislative record shows that these functions were deliberately separated. Senator Kyi explained the purpose of avoiding self-review:
Obviously, subsection (a) alone would not be enough to test the view that PTO has reached an incorrect conclusion on an important legal question because subsection (a) requires the petitioner to persuade PTO that a claim appears to be un-patentable, and PTO is unlikely to be so persuaded if it has already decided the underlying legal question in favor of patentability.
154 Cong. Rec. S9982-93 (Sept. 27, 2008). The separation of these roles helps to ensure that the decision of the PTAB is not a rubber stamp of the institution decision, nor a shortcut on “an important legal question.” The PTO’s practice of assigning the institution decision to the PTAB is contrary to the statute, and commentators have objected, stating that:
Currently the same APJs consider an incomplete and preliminary record to decide that the claims being challenged in a petition are likely unpatentable. Those same APJs are then required to make the Final Written Decision — in essence, they are put in the position of defending their prior decision to institute the trial. This creates an actual or perceived bias against the patent owner.
AIPLA Comments on PTAB Trial Proceedings, at 20 (Oct. 16, 2014), available athttp://www.uspto.gov/ip/boards/bpai/ aiplEL_20141016.pdf. See also Ethicon Endo-Surgery, Inc. v. Covidien LP, No. 2014-1771, 812 F.3d 1023, 2016 WL 145576 (Fed.Cir. Jan. 13, 2016) (Newman, J., dissenting).
This further contravention of the statute is not supportable.
*1341 y
The AIA Must Be Applied as a Balanced Whole
The record shows extensive policy balances in the AIA as eventually enacted. Today’s concerns focus primarily on procedures adopted after enactment of the statute, such as post-grant use of the “broadest” claim construction; a topic under review elsewhere.[5] And I have previously pointed to issues arising from conflicting final decisions in the PTAB and the district court, see Fresenius USA, Inc. v. Baxter International, Inc., 721 F.3d 1330, 1347 (Fed.Cir.2013) (Newman, J., dissenting).
In addition, the statutory provision for amending claims for post-grant review has been misapplied. Although the AIA authorizes claim amendment, PTO statistics demonstrate the PTAB’s practice of denying almost all motions to amend, as referenced in Cuozzo, 793 F.3d at 1288 n. 1 (Newman, J., dissenting). Updated statistics show little change, see Daniel F. Klo-dowski and David Seastrunk, Claim and Case Disposition, AIA BLOG, http://www. aiablog.com/claim-and-case-disposition/ (visited Feb. 5, 2016) (Reporting IPR Substitute Claim Disposition as of Jan. 1, 2016: 446 (94.49%) substitute claims denied, 26 (5.51%) substitute claims granted.)
It devolves upon the court to assure fulfillment of the policy embodied in the statute, with appreciation of the statutory balance and the interrelation of provisions. The availability of amendment in IPR proceedings, as compared with district courts, balances the lighter standard of invalidation for IPR proceedings. A witness stated, in response to questions by Senators Grassley, Coburn, Specter and Kyi:
[Unnecessarily restricting the paten-tee’s ability to amend its claims (in contrast with the flexible inter partes reexamination process) ... encourage[s] outright invalidation of a patent that may simply require an adjustment in scope.
Patent Reform: the Future of American Innovation: Hearing Before Senate Comm. on the Judiciary, 110th Cong. 45 (Responses of Bruce Bernstein, Chief Intellectual Property and Licensing Officer, InterDigital Communications Corp.).
The amendment opportunity was emphasized. See id. at 90 (Post-Hearing question of Sen. Kyi to Mary Doyle) (“24. Under the post-grant review procedure proposed in S. 1145, a patentee may amend its claims only once as a matter of right, and may further amend only for good cause shown.”). Thus the statute provides:
§ 316(d) Amendment Of The Patent.—
(l)In general. — During an inter partes review instituted under this chapter, the patent owner may ñle 1 motion to amend the patent in 1 or more of the following ways:
(A) Cancel any challenged patent claim.
(B) For each challenged claim, propose a reasonable number of substitute claims.
(2)Additional motions.—
Additional motions to amend may be permitted upon the joint request of *1342 the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director.
(3)Seope of claims.—
An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.
(emphasis added). In the context of the statement of Senator Kyi that the legislation provides for one amendment “as a matter of right,” the reported implementation is indeed questionable.
The record demonstrates that the statute was well understood as creating a fresh balance, whereby patents could be challenged in opposition-like proceedings, whether or not there was a “case or controversy” as required by Article III. Congress lowered the evidentiary standard of invalidity applied by the courts to granted patents, and authorized limited amendment, thereby allowing correction of flaws in the prior grant. This statute requires implementation in accordance with the legislative purpose.
VI
This New Proceeding Is of Power and Promise
The power and promise of the America Invents Act, and the aspirations held by Congress and the Nation, recognize American innovation and the capability of invention to serve the public and the economy. For so large a change in national practice, adjustment is not surprising. The glitches I have pointed out are readily remediable, and appear to flow from construing isolated statutory provisions. See Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (“[Sjtatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context with a view to their place in the overall statutory scheme.”). Each provision contributes to the balance established in the statute, as Congressman Berman explained:
Like all compromises, not everyone received everything they wanted, which is honestly just as it should be. This legislation favors no industry, no person, organization or interest group. It seeks to solve problems that we have identified and have been identified for us by outside experts and agencies.
153 Cong. Rec. 23904-11 (2007) (Rule for debate on Patent Reform Act of 2007). Senator Leahy also commented on concerns that were balanced:
The array of voices heard in this debate represent virtually all sectors of our economy, all interests in the patent system. They have not been uniform, but they know the legislative process is one of compromise and accommodation where possible, and it has been that way during the 6 years we have been at work on this bill.
157 Cong. Rec. S1349 (daily ed. Mar. 8, 2011).
Congress aspired to revitalize the Nation’s patent system, in an era of innovation beyond imagination. I respectfully dissent from the departures from the legislative plan.

. In 1982 (the year the Federal Circuit came into being), 117,987 patent applications were filed and 63,276 patents were granted; in FY 2015, 617,216 patent applications were filed and 322,448 patents were granted. USPTO, Performance and Accountability Report Fiscal Year 2015, 185-187 available at http://www. uspto.gov/sites/default/files/documents/ USPTOFY15PAR.pdf and U.S. Patent Statistics Chart Calendar Years 1962-2014 available at http://www.uspto.gov/web/offices/ac/ ido/oeip/taf/us-stat.htm.

. In FY 1982, 845 patent infringement suits were filed. Admin. Office of U.S. Courts, U.S. District Courts-Civil Cases Commenced, by Nature of Suit, tbl.C-2A (Sept 1985). In FY 2015, 5,686 patent infringement suits were filed. Admin. Office of U.S. Courts, U.S. District CourtsCivil Cases Commenced, by Nature of Suit, tbl.C-2A (Sept. 2015).

. From the September 16, 2012 opening date to December 31, 2015, 3,953 petitions for inter partes review were filed. See online at http://www.uspto.gov/sites/defaulVfiles/ documents/2015-12-31PTAB.pdf. During the period between September 30, 2012, to September 30, 2015, 17,747 patent infringement complaints were filed in the district courts. See Admin Office of U.S. Courts, note 2, supra.

. Starting with a hearing on May 10, 2001, before the House Committee on the Judiciary (Patents: Improving Quality and Curing Defects ). The first bill that would coalesce into the AIA was introduced on October 8, 2004. 108 H.R. 5299 (Patent Quality Assistance Act of 2004).

. In re Cuozzo Speed Technologies, LLC, 778 F.3d 1271 (Fed.Cir.2015), cert. granted Jan. 15, 2016.